UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| **BRIAN MOHR,** | : | Case No. 2:19-cv-00150-JTM-JPK |
| | : | |
| Plaintiff, | : | Judge James T. Moody |
| | : | |
| vs. | : | Magistrate Judge Joshua P. Kolar |
| | : | |
| **NEWREZ, LLC, f/k/a NEW PENN** | : | |
| **FINANCIAL, LLC, d/b/a** | : | **DEFENDANT'S REPLY** |
| **SHELLPOINT MORTGAGE** | : | **MEMORANDUM IN SUPPORT OF** |
| **SERVICING,** | : | **MOTION TO DISMISS AMENDED** |
| | : | **COMPLAINT** |
| Defendant. | : | |

## I. INTRODUCTION[1]

In his *Response,*[2] Mohr sidesteps the threshold issue - whether Shellpoint's Letters were an attempt to collect a *discharged* debt against Mohr personally. They were not. As a result, the Court should dismiss this case from the outset. The Court need not engage in Mohr's preferred analysis of "whether an unsophisticated consumer could believe that Shellpoint was asking for payment of money."

Instead, the Court should objectively analyze the Letters and conclude that the Letters were not an attempt to collect a discharged debt against Mohr personally. Therefore, so long as the Letters contained a bankruptcy disclaimer confirming that Shellpoint was not attempting to collect a discharged debt, the Letters maintain the presumption that they were informational rather than an attempt to collect a discharged debt.

---

[1] Unless otherwise defined in this Reply Memorandum, the capitalized terms used have the same definitions as assigned in Shellpoint's *Motion to Dismiss*, filed on July 15, 2019 [Doc. 17] ("Motion").
[2] *Plaintiff's Response to Defendant's Motion to Dismiss Amended Complaint,* filed August 5, 2019 [Doc. 18] ("Response").

Mohr also muddles the analysis when he suggests Shellpoint should be liable because the Letters' bankruptcy disclaimer was not the *best* means of advising Mohr that Shellpoint was not attempting to collect a debt against him personally. Although Mohr unquestionably discharged his personal liability on the Mortgage Loan in his Bankruptcy, Shellpoint's *in rem* rights against the Property under the Mortgage remained. In order to exercise its rights *in rem* to recoup its cost for obtaining insurance, RESPA and Regulation X required Shellpoint to send advance notice. Shellpoint thus sent the Letters to Mohr, the Property owner, and the only logical recipient.

The Letters merely informed Mohr that the Property was uninsured, that he was free to obtain insurance, and that Shellpoint would obtain insurance on his behalf if he failed to do so. Absent such correspondence, federal regulations would preclude Shellpoint from recovering the costs of the insurance. So Shellpoint navigated the precarious regulatory structure and merely informed Mohr that Shellpoint was exercising its *in rem* rights against the Property. The Letters were not an attempt to collect a discharged debt. Nor were they an attempt to collect a debt against Mohr *personally*. As a result, they did not violate the FDCPA.

## II.  LAW AND ARGUMENT

### A.  Shellpoint Did Not Attempt To Collect A Discharged Debt From Mohr Personally.

Mohr's Complaint is based on the faulty premise that Shellpoint attempted to collect a discharged debt. But for his Bankruptcy, Mohr would have no colorable FDCPA claim against Shellpoint based on the Letters. In order to prevail in this case, Mohr must establish that (1) his obligation to provide hazard insurance was discharged in the

Bankruptcy, and (2) Shellpoint sent the Letters to collect the discharged debt from Mohr personally. In reality, Shellpoint sent the Letters in conjunction with its effort to exercise its *in rem* rights under the Mortgage in order reserve its right to recover the cost of insurance expenses against Mohr's equity in the Property.

In a case directly on-point, the bankruptcy court in *In re Thomas* succinctly explained why hazard insurance letters are not an attempt to collect a discharged debt:[3]

> A debtor's mortgage-based obligation to provide hazard insurance on the mortgaged property includes an *in rem* component of the obligation that is not dischargeable in bankruptcy and that is enforceable against the debtor's equity in the property. When a mortgagee is forced to buy insurance to protect its collateral, the Bankruptcy Code's automatic stay and discharge injunction do not prohibit it from charging the cost of the insurance against the debtor's equity in the property. For the mortgagee to offset its cost in this manner, RESPA requires the mortgagee to provide the debtor with notices warning the debtor of what it is about to do. So long as that notice has an adequate bankruptcy disclaimer, it is not an "act to collect" a debt against the debtor personally within the meaning of § 362(a)(6).

In other words, recouping the cost of hazard insurance against the Property is not an attempt to collect a debt against the debtor personally. And so long as the correspondence so advising the debtor contains a bankruptcy disclaimer, it should not be construed as an attempt to collect against the debtor personally.

Here, Shellpoint had the right under the Mortgage to recover its insurance cost, but could only recover *in rem* against the Property. But first, RESPA required Shellpoint to send the Letters advising Mohr what it was about to do, and giving him the option to obtain his own insurance policy. And in order to avoid remain informational correspondence rather than an attempt to collect a debt against Mohr personally, Shellpoint included a bankruptcy disclaimer in the Letters.

---

[3] *Thomas v. Seterus Inc. (In re Thomas),* 554 B.R. 512, 523 (Bankr.M.D. Ala. 2016).

As a result, the narrow issue is before this Court is whether the bankruptcy disclaimer in the Letters was so woefully inadequate as to convert Shellpoint's Letters related to its *in rem* rights against the Property (which was not discharged) into an attempt to collect a discharged debt against Mohr personally.

**B.    Shellpoint's Letters Included An Adequate Bankruptcy Disclaimer.**

In his Response, Mohr confuses a perfect disclaimer with an adequate disclaimer. Unsurprisingly, he alleges that Shellpoint violated the FDCPA because its disclaimer lacked the clarity of the disclaimers in other cases. In support, Mohr cites *In re Henriquez*,[4] which analyzed a disclaimer that the *Thomas* Court cited as a superb example. But the *Thomas* Court correctly noted that the FDCPA does not require perfection to avoid liability, and it thus dismissed the FDCPA claim against Chase Bank based on the following disclaimer, on page 7:[5]

> To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.

Shellpoint's Letters contained the nearly identical disclaimer, on page 3:[6]

> To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

Just as the *Thomas* Court found Chase Bank's disclaimer effective enough to avoid liability, so too should this Court. Shellpoint's disclaimer was at least as prominent as Chase Bank's, featured on page 3 of the correspondence rather than page

---

[4] *In re Henriquez*, 536 B.R. 341, 348 (Bankr.N.D. Ga. 2015).
[5] *In re Thomas*, 554 B.R. 512, 516 (Bankr. M.D. Ala. 2016)
[6] Complaint, Exs. B, C.

4

7. It also informed Mohr that it was sent for compliance and informational purposes only, rather than attempting to collect a discharged debt. Mohr reads the phrase "to the extent that" as negating the remainder of the disclaimer and rendering it a nullity, an interpretation that strains credulity.[7]

And Mohr is comparing apples and oranges when he relies on *In re Jackson*[8] to attack Shellpoint's disclaimer. In that case, the bankruptcy court found a disclaimer at the bottom of loan modification solicitation insufficient to shield the creditor from liability on what was otherwise quite clearly an attempt to collect a debt. The cases are not remotely similar. In *In re Jackson*, the first page of the disputed correspondence stated in bold print "Urgent—Needs your Immediate Attention!" and the body of the letter stated the amount of the mortgage loan's arrearage, the short deadline to remit funds, and the consequences (i.e., foreclosure) for failing to agree to modify the mortgage loan. Shellpoint's Letters involved hazard insurance and never even referenced the amount due on the Mortgage Loan. Shellpoint is not relying on a disclaimer to rehabilitate an otherwise coercive collection letter.

### C. Mohr's Attempt To Distinguish *In Re Thomas* Is Unavailing.

In his Response, Mohr attempts to distinguish *In re Thomas*, which contained the same "must pay" language as the Letters (and as required by RESPA and Regulation X). Mohr brushes *In re Thomas* aside, erroneously suggesting the *Thomas* Court applied a different standard requiring a *willfulness* in finding for the defendant. Not so.

---

[7] Response, p. 7, ("Here, we have a vague invitation for the consumer to determine to what 'extent' his obligation to pay may have been discharged.")
[8] *Id.*, citing *In re Jackson,* No. 14-3568, 2017 WL 1102849, at *3 (Bankr. S.D. Ala. Mar. 23, 2017).

The *Thomas* Court's analysis centered on the Bankruptcy Code's meaning of an "act to collect,"[9] finding it to apply to a communication that "overtly demands payment, coerces its recipient to provide payment, or lacks a valid informational purpose." As discussed above, the *Thomas* Court then found the hazard insurance letter was *not* an act to collect because the bankruptcy does not discharge the mortgagee's *in rem* rights under the mortgage, and the insurance letter contained a bankruptcy disclaimer alerting the debtor accordingly. The *Thomas* Court did not analyze whether the communication was a *willful* violation because it found the letter was not an act to collect against the debtor personally in the first place.[10] And there is no meaningful difference between an "act to collect" under the FDCPA and the Bankruptcy Code.

### D. The *Miller v. Carrington* Case Is Simply An Outlier That Was Wrongly Decided.

Mohr heavily relies on *Miller v. Carrington Mortg. Servs., LLC*,[11] a recent case from Maine. In *Miller*, the plaintiff/borrower discharged personal liability on his home mortgage loan, just as Mohr did in this case. But in conjunction with the hazard insurance letters, the defendant/lender in *Miller* also allegedly (1) filed a foreclosure suit seeking judgment against the borrower personally, (2) sent him a series of mortgage statements, and (3) made numerous collection calls. Perhaps influenced by the lender's numerous and haphazard collection efforts, the *Miller* court concluded that the hazard insurance letters were also an attempt to collect a debt under the FDCPA.

---

[9] 11 U.S.C. §362(a).
[10] *In re Thomas*, 554 B.R. 512, 520 (Bankr. M.D. Ala. 2016) ("Chase does not attack the willfulness of its conduct or Plaintiffs' injury in its motion to dismiss. Instead, Chase argues that its conduct did not violate the automatic stay at all. Therefore, the issues are (1) whether Chase's monthly mortgage statements are an attempt to collect an *in personam* debt against Plaintiffs, (2) whether Chase may hold Plaintiffs responsible for force-placed hazard insurance on the Property after Plaintiffs have surrendered the Property and, to the extent Chase may not, whether its insurance letters are an attempt to collect from Plaintiffs personally, and (3) whether Chase may be held liable for the conduct of its servicer, Seterus.").
[11] *Miller v. Carrington Mortg. Servs., LLC, supra,* 2019 WL 2871141, at *6–7 (D. Me. July 3, 2019)

Shellpoint respectfully suggests that the *Miller* Court simply got it wrong, and that it issued an outlier opinion this Court should not adopt. The *Miller* decision contained virtually no bankruptcy analysis, accepting as true the premise that recovering hazard insurance amounts to an attempt to collect a discharged debt. Shellpoint cited several cases in its Motion that thoroughly analyzed the interplay between the mortgage and the bankruptcy discharge. Those cases, most notably and directly *In re Thomas*, unanimously held that the bankruptcy did not discharge the lender's *in rem* rights under the Mortgage. And because the right to proceed *in rem* survived the bankruptcy discharge, the Letters are presumptively informational, and the bankruptcy disclaimer keeps the Letters from turning into an attempt to collect a discharged debt.[12]

Shellpoint also cited several other cases in its Motion merely for the proposition that a "debt collector" can send correspondence that is *informational* rather than *an attempt to collect a debt*.[13] Shellpoint never argued that these cases are controlling. Mohr distinguishes these cases factually, attacking a straw man by wrongly suggesting that Shellpoint relied on these cases as controlling in this case.

### E. The Plaintiff Fails To State An FDCPA Claims Based On The Foreclosure Delay.

Mohr also asks this Court find that Shellpoint's alleged six-month delay from filing the Foreclosure to entering a judgment amounts to a "deceptive and unfair practice" violating the FDCPA, 15 U.S.C. §1692f.[14] The statute sets forth eight distinct actions that constitute a violation of the FDCPA, none of which remotely applies to the facts alleged. And Mohr cites no precedence for his novel claim.

---

[12] Motion, fn. 53.
[13] *See* Motion, p. 7-8, fns. 30-36; Response, p. 8-10.
[14] Complaint, ¶35.

As a practical matter, most borrowers who discharged any personal liability on a mortgage loan would be thrilled to delay the inevitable foreclosure. If anything, Shellpoint stood to lose from the alleged delay, as it continued to pay the insurance and maintenance expenses to preserve the Property. On the flip side, common sense dictates that Mohr continued to enjoy the use of the Property without any of the attendant costs. Mohr's alleged damages arising from homeowner's association fees for which he is not personally liable fails to rise above the speculative level and should be dismissed from the outset.

>    **F.   The Plaintiff's Contract Claims Ask This Court To Wrest Control From The State Court To Decide Issues Arising Directly From The Pending Foreclosure.**

Mohr's breach of contract claims are not ripe. If the Court exercises supplemental jurisdiction over Mohr's contract claims, it should promptly dismiss them. He has not suffered any damages. Mohr does not allege that Shellpoint has even sought to recover its insurance charges against him or from the Property's sale proceeds, and thus Shellpoint has not breached any contract.

Mohr seeks to survive the pleadings stage in this case by arguing that he could not have objected to the reasonableness of the insurances expenses in the Foreclosure because the issue has not yet been before the state court. In so doing, Mohr tacitly admits his contract claims in Counts Two and Three are not yet ripe. Instead, he asks this Court for declaratory relief to determine the amounts he owes.[15] That determination is a core function of the state court in a Foreclosure. Mohr presents no compelling reason why this Court should entertain concurrent and duplicative litigation.

---

[15] Response, p. 12.

Even if *Rooker-Feldman* does not technically apply because the state court has not yet entered a final judgment confirming the sale and distributing sale proceeds, this Court can and should invoke comity or abstention doctrines to dismiss this federal action in favor of the state-court litigation.[16] And this Court should not offer an advisory opinion as to the reasonableness of the hazard insurance expenses or tie the state court's hands by making that hypothetical determination. Mohr is free to make those arguments to the state court if and when the time to do so arises.

## III. CONCLUSION

For the foregoing reasons, Defendant Shellpoint requests that the Court find that the Complaint fails to state a claim for relief under Fed.R.Civ.P. 12(b)(6), and dismiss this case.

OF COUNSEL:

GRAYDON HEAD & RITCHEY LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
Phone: (513) 621-6464
Fax:     (513) 651-3836

Respectfully submitted,

*/s/ Jeffrey J. Hanneken*
Jeffrey J. Hanneken (31726-15)
*Counsel for Defendant NewRez, LLC, f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing*
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-0349
Fax:     (513) 651-3836
E-mail: jhanneken@graydon.law

---

[16] See, *e.g., Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800 (1976).

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing *Reply Memorandum* was filed via the CM/ECF system that will send notification to all counsel of record, this 19th day of August, 2019.

                                                          */s/ Jeffrey J. Hanneken*
                                                        Jeffrey J. Hanneken (31726-15)

9602048.2