UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| BRIAN MOHR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19 CV 150 |
| | ) | |
| NEWREZ, LLC, f/k/a NEW PENN | ) | |
| FINANCIAL, LLC, d/b/a SHELLPOINT | ) | |
| MORTGAGE SERVICING, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

This matter is before the court on defendant Newrez LLC's motion to dismiss. (DE # 17.) For the reasons that follow, defendant's motion will be granted.

### I. BACKGROUND

The following factual allegations are taken from plaintiff Brian Mohr's amended complaint (DE # 16) and are accepted as true for the purpose of resolving the pending motion to dismiss. *See Simpson v. Brown Cty.*, 860 F.3d 1001, 1009 (7th Cir. 2017).

Plaintiff had a residential mortgage loan for a property in Merrillville, Indiana. (DE # 16 at 1-2.) Plaintiff subsequently filed a Chapter 7 bankruptcy, which discharged his personal obligation for the loan. (*Id.* at 3.) The then-servicer of the loan filed an automatic stay of the bankruptcy proceedings, in order to proceed with a foreclosure case, but did not follow through with the foreclosure action. (*Id.*) Plaintiff eventually vacated the property. (*Id.*)

In August 2017, after plaintiff's personal responsibility for the loan had been discharged through the bankruptcy, defendant began servicing the loan. (*Id.*) In January 2018, plaintiff sued defendant in a different lawsuit, for violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"). *See Mohr v. New Penn Financial, LLC*, 2:18-CV-40-JTM-JEM (N.D. Ind. filed Jan. 30, 2018). The case settled and was dismissed in August 2018. *Id.* at DE # 21.

As part of the settlement, plaintiff agreed to a consent foreclosure and foreclosure was filed in September 2018. (DE # 16 at 3.) According to plaintiff, nothing was done to advance the foreclosure for six months. (*Id.* at 3-4.)

Plaintiff's present FDCPA claim is based off of three letters that defendant sent him, dated February 19, 2019 ("First Warning Letter"), March 21, 2019 ("Second Warning Letter"), and April 8, 2019 ("Final Letter").[1] The first two letters informed plaintiff:

> Our records show that your homeowner's association (HOA) hazard insurance expired and we do not have evidence that your homeowner's association has obtained new coverage. **Because homeowner's association (HOA) hazard insurance is required on your property, we plan to buy insurance for your property.** You must pay us for any period during which the insurance we buy is in effect but you do not have insurance.
>
> You should immediately provide us with your insurance information. We urge you to contact your Homeowner's Association to obtain current evidence of homeowner's association (HOA) hazard insurance for your property referenced above.

---

[1] Because the three letters were attached to plaintiff's amended complaint as exhibits, the court may treat them as part of the pleadings. Fed. R. Civ. P. 10(c); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010).

(DE # 16-1 at 2; DE # 16-2 at 2 (emphasis in original).) The letters provided the procedure for plaintiff to submit proof of insurance. (*Id.*)

The first two letters also contained the following language:

Shellpoint Mortgage Servicing is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

(DE # 16-1 at 4; DE # 16-2 at 2.) Additionally, the Second Warning Letter informed plaintiff that the insurance defendant would buy "**Will cost an estimated $6,115.20 annually, which may be significantly more expensive than the insurance you can buy yourself.**" (DE # 16-2 at 2 (emphasis in original).)

On March 22, 2019, the Lake County Superior Court entered an *in rem* judgment and decree of foreclosure on plaintiff's former property. (DE # 16 at 4.)

The Final Letter, dated two weeks later, advised plaintiff that defendant had obtained lender-placed insurance at a cost of $6,115.20, that it would charge the premium to plaintiff's escrow account, that plaintiff's monthly payments would be adjusted to cover the cost of the insurance, and that defendant would cancel the lender-placed insurance upon proof that plaintiff had obtained his own insurance coverage. (DE # 16-3 at 2.) The final letter contained the price of the premium, but advised, "[t]his is not an invoice." (*Id.* at 4.)

Plaintiff's amended complaint alleges that defendant violated the FDCPA, 15 U.S.C. § 1692, *et seq.*, when it sent plaintiff the three letters. (*Id.* at 4.) Plaintiff

3

specifically alleges that defendant violated § 1692e, § 1692e(2), and § 1692e(10) by falsely representing that plaintiff was personally liable for a debt and must pay defendant money. (*Id.*) Plaintiff also alleges that defendants violated § 1692f by committing the following unfair practices: (1) delaying the foreclosure on the property for six months, after plaintiff agreed to a consent foreclosure; (2) sending letters threatening to make plaintiff pay for insurance expenses on a property when defendant "has been dragging its feet for years on foreclosing" that property; and (3) adding an excessive amount of force placed insurance against plaintiff's property. (*Id.* at 5.) Plaintiff also alleges two breach of contract claims against defendant.

Defendant now moves to dismiss plaintiff's complaint on the basis that the letters were not an attempt to collect a debt and thus did not trigger the FDCPA. (DE # 17 at 5.) Defendant also argues for the dismissal of plaintiff's breach of contract claims.

## II. LEGAL STANDARD

Defendant has moved to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. A judge reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

4

Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010). Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

III. **DISCUSSION**

    *A.    FDCPA Claim*

Among other things, the FDCPA "bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting a debt." *Gburek v. Litton Loan Servicing LP*,

5

614 F.3d 380, 384 (7th Cir. 2010) (citing 15 U.S.C. §§ 1692e, 1692f). "For the FDCPA to apply, however, two threshold criteria must be met. First, the defendant must qualify as a 'debt collector[.]'" *Id.* Defendant concedes, for purposes of its motion to dismiss, that it is a debt collector under § 1692a(6). "Second, the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Id.* (quoting 15 U.S.C. §§ 1692c(a)–(b), 1692e, 1692g). Defendant argues that its letters regarding hazard insurance were not 'made in connection with the collection of any debt.'

There is no bright-line rule for determining whether a communication from a debt collector meets this standard. *Id.* "Whether a communication was sent 'in connection with the collection of any debt' is an objective question of fact." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 467 (7th Cir. 2018). However, the FDCPA does not apply automatically to every communication between a debt collector and a debtor. *Gburek*, 614 F.3d. at 384-85. Moreover, the FDCPA does not apply merely because a letter bears a disclaimer identifying it as an attempt to collect a debt. *Id.* at 386 n.3.

The Seventh Circuit applies a commonsense inquiry to whether a communication is 'in connection with the collection of any debt.' *Id.* at 385. The Court looks at several factors, including: whether there was a demand for payment, the nature of the parties' relationship, and the purpose and context of the communications—viewed objectively. *Id.* None of these factors, alone, is dispositive. *Schlaf*, 899 F.3d at 467. The court will consider each factor in turn.

First, the hazard insurance letters in this case did not have any explicit demand for payment. (*See* DE ## 16-1, 16-2, 16-3.) Aside from identifying the loan number at the top of the letters, the letters did not reference the mortgage loan or the foreclosure proceedings. The letters also did not demand immediate payment on the mortgage loan or for hazard insurance. While the letters stated "[y]ou must pay us for any period during which the insurance we buy is in effect but you do not have insurance," the letters did not provide any instruction or method by which plaintiff could pay defendant for hazard insurance. Rather, the letter encouraged plaintiff to purchase his own insurance. These letters were merely a warning of a future consequence. *See Gburek*, 614 F.3d at 384; *Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998) ("A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstance wherein payments are missed and a real dun must be mailed."). Thus, this first factor does not weigh in favor of finding that the communication was sent in connection with a debt.

Second, the court considers the nature of the parties' relationship. Defendant was the servicer of the mortgage loan; the parties had previously litigated the legality of prior collection notices defendant sent plaintiff; and the parties were engaged in foreclosure proceedings. This second factor weighs in favor of finding that the communications were in connection with the collection of a debt.

Finally, the court considers the purpose and context of the communications. The parties do not dispute that hazard insurance was required on the property, and that plaintiff did not have a hazard insurance policy in place. Federal law permits creditors, such as defendant, to "force place" hazard insurance on a property, but requires that specific written communications first be provided to the debtor. Pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, "[a] servicer may not impose any charge on any borrower for force-placed insurance with respect to any property securing a federally related mortgage unless" the servicer has sent two written notices to the borrower containing the following information:

> (i) a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;
>
> (ii) a statement that the servicer does not have evidence of insurance coverage of such property;
>
> (iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and
>
> (iv) a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner[.]

12 U.S.C. § 2605(l).

Additionally, Regulation X of the Bureau of Consumer Financial Protection, 12 C.F.R. § 1024, *et seq.*, requires that these notices contain specific statements, including "[a] statement that hazard insurance is required on the borrower's property, and that

the servicer has purchased or will purchase, as applicable, such insurance at the borrower's expense[.]" 12 C.F.R. § 1024.37(c)(2).

Thus, in order for defendant to recuperate the cost of the hazard insurance after foreclosure,[2] defendant was required under federal law to send plaintiff the three letters at issue in this case. The purpose of the letters, viewed objectively, was informational and in compliance with federal law. This final factor weighs in favor of finding that the letters were not communications in connection with the collection of a debt.

On balance, taking these factors into consideration and considering the circumstances as a whole, this court finds that the hazard insurance letters at issue in this case were not communications sent in connection with the collection of any debt. These letters notified plaintiff that insurance was required for the property, and that if he did not provide proof of insurance or obtain insurance himself, insurance would be obtained at his expense. The letters explained that it may be in plaintiff's interest to obtain his own insurance policy, and encouraged him to do so by identifying the ways in which force-placed insurance was not to his benefit. Viewed objectively, the letters were merely informational notices, explaining plaintiff's options.

---

[2] The parties agree that at the time the letters were sent, defendant could not hold plaintiff personally responsible for his obligation to maintain hazard insurance on the property. (*See* DE # 17 at 9.) They agree that the only way for defendant to recuperate the cost of the hazard insurance would be from the surplus that plaintiff and other lienholders would otherwise receive from the sale of the property after foreclosure.

The few courts across the country that have considered whether hazard insurance letters are communications made 'in connection with the collection of any debt' have almost uniformly determined that they are not. *See e.g. Alhassid v. Nationstar Mortg.*, LLC, 688 F. App'x 803 (11th Cir. 2017) (mem.); *Preuher v. Seterus, LLC*, No. 14 C 6140, 2014 WL 7005095, at *3 (N.D. Ill. Dec. 11, 2014); *Burns v. Seterus, Inc.*, No. 16-CV-06638, 2017 WL 104735, at *3 (W.D.N.Y. Jan. 11, 2017); *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 688 (D. Haw. Apr. 17, 2017); *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 WL 4063403, at *2 (M.D. Fla. July 29, 2016); *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1282 (M.D. Fla. June 4, 2015).

At least two courts have come to a different conclusion. *See Miller v. Carrington Mortg. Servs.*, LLC, 607 B.R. 1, *11 (D. Me. July 3, 2019); *Kowalski v. Seterus, Inc.*, No. 2:16-CV-00160-JAW, 2017 WL 79949, at *12-13 (D. Me. Jan. 9, 2017). Both cases are distinguishable in significant respects. In *Miller*, the court's conclusion was based on its belief that an unsophisticated consumer might understand the hazard insurance letter to be a demand for payment. *Miller*, 607 B.R. at *11. In this circuit, however, the 'in connection with' element is governed by an objective standard; it is not subject to the unsophisticated-consumer standard. *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009). Furthermore, in *Kowalski*, and unlike the present case, the creditor sent the hazard insurance letters *after* the plaintiff's property had been sold at auction, and where plaintiff had no legal obligation to obtain hazard insurance. *Kowalski*, 2017 WL 79949 at *13.

Plaintiff points out that the disclosures in the letters state that defendant is a debt collector and state, "[t]his letter is an attempt to collect a debt[.]" (*See* DE # 16-1 at 4.) Yet, it is well-established in this circuit that the inclusion of a FDCPA disclaimer on a debt collection letter does not make the communication 'in connection with' the collection of a debt. *See Gburek*, 614 F.3d at 386 n.3 ("The letter bore a disclaimer identifying it as an attempt to collect a debt, but this does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance.").

Plaintiff also makes the related arguments that: (1) the letters are misleading because he is not personally liable for the cost of hazard insurance because his mortgage debt was discharged in bankruptcy; and (2) the letters should not have been sent to him in the first place because the debt had been discharged in bankruptcy. (DE # 18 at 5.) As the court in *McCamis* explained, "this argument places the cart before the horse—the Court has to decide the threshold issue of whether the letters were sent in connection with collecting a debt before it reaches the issue of whether they were sent for an improper purpose. Having answered the threshold question in the negative, the Court need not discuss whether [Defendant] should have sent them to Plaintiff in the first place." *McCamis*, 2016 WL 4063403, at *3 n.4.

Plaintiff's final argument is that an unsophisticated consumer would believe that the letters were a demand for the payment of a debt. (*See* DE # 18 at 9-11.) However, as noted above, in this circuit courts do not apply the unsophisticated-consumer test to the

11

question of whether a communication was 'in connection with' the collection of a debt. Rather, an objective standard governs. *Ruth*, 577 F.3d at 798.

This court concludes that the three letters defendant sent plaintiff, informing plaintiff that hazard insurance was required on his property, demanding proof of insurance, and informing him that defendant would purchase hazard insurance for the property on his behalf and ultimately at his expense, were not communications 'in connection with' the collection of any debt, and therefore do fall not within the ambit of the FDCPA. Defendant's motion to dismiss plaintiff's FDCPA claim will be granted.

B. *State Law Claims*

Plaintiff's remaining claims are state law claims for breach of contract. In the absence of any remaining federal claim, the court declines to exercise jurisdiction over this matter any further.

Principles of comity encourage the court to relinquish supplemental jurisdiction over state law claims when all of the federal claims are disposed of prior to trial. *See Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); 28 U.S.C. § 1367(c)(3). In fact, in this circuit, there is a "presumption" that federal courts will relinquish jurisdiction over supplemental state law claims when the federal claims drop out of the case. *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and

substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* at 479 (internal citation and quotation marks omitted).

While in some circumstances it is appropriate for a district court to retain jurisdiction over state law claims after the federal claims have dropped out of the case, none of those circumstances are present in this case. *See id.* at 478-81; *Sharp Elecs. Corp v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009). Here, plaintiff will not be prejudiced by this dismissal because he may refile the case in state court as appropriate under Indiana's savings statute, Ind. Code § 34–11–8–1, and the tolling provision of 28 U.S.C. § 1367(d). Moreover, this matter remains at the pleading stage, and there has not been such substantial judicial resources committed to the claims that sending the case to another court will cause a substantial duplication of effort. Finally, the merits of the state law claims are not "absolutely" clear, *see Sharp Elecs. Corp.*, at 515, and therefore a state court should have the opportunity to address the merits of these claims in the first instance.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant Newrez LLC's motion to dismiss. (DE # 17.) The court **DENIES AS MOOT** defendant Newrez LLC's motion to dismiss. (DE # 15.) The court **DIRECTS** the Clerk to close this case.

**SO ORDERED.**

Date: March 25, 2020

 s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT

13